# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kunj Harrisburg LLC, | : | |
| Eisenhower WWTF, Inc., | : | |
| Eisenhower Water Supply, Inc., | : | |
| Eisenhower Hotels, LLC, | : | |
| Allstar Exposition, LLC, and | : | |
| Aspire Hotel, LLC, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 390 F.R. 2020 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | Argued: December 9, 2024 |


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                          FILED: January 10, 2025

Kunj Harrisburg LLC (Kunj); Eisenhower WWTF, Inc. (Eisenhower WWTF); Eisenhower Water Supply, Inc. (Eisenhower Water); Eisenhower Hotels, LLC (Eisenhower Hotels); Allstar Exposition, LLC (Allstar); and Aspire Hotel, LLC (Aspire) (the latter five, collectively, New Associations; all six, collectively, Petitioners) petition this Court for review of the July 10, 2020 Order of the Board of Finance and Revenue upholding the Department of Revenue's (Department) assessments of state and local realty transfer tax on the transfer of five property deeds (Deeds) executed on August 10, 2018, and recorded on August 15, 2018. Petitioners argue that the Deeds are not subject to the realty transfer tax because they were only

recorded to memorialize the division of real property into parcels that had been allocated to the New Associations pursuant to the Entity Transactions Law (ETL).[1] After review, we agree with Petitioners and reverse the Board of Finance and Revenue.

## I. Background

On May 9, 2013, Kunj was organized as a limited liability company through the filing of its certificate of organization with the Pennsylvania Department of State. Join Stipulation of Facts (Joint Stip.) ¶ 3. Through a declaration recorded on January 18, 2018, Kunj converted the real property that it owned at 2634 Emmitsburg Road, Gettysburg, Cumberland Township, Adams County, into the Eisenhower Inn Condominium Association (Condominium Association), consisting of seven condominium units. *Id.* ¶¶ 6-8. The Condominium Association was subsequently organized as a nonprofit corporation through articles filed with the Department of State. *Id.* ¶ 8; *see also id.*, Ex. B.

On January 24, 2018, Kunj filed with the Department of State a Statement of Division, which divided Kunj into six limited liability companies consisting of Kunj itself and the five New Associations. *Id.* ¶ 9. In an accompanying Plan of Division filed pursuant to Section 362 of the ETL,[2] 15 Pa.C.S. § 362, Kunj outlined its intent to maintain control of the Condominium Association's first two units, while the remaining five units were to be allocated to the New Associations. *Id.* ¶ 11; *see also*

---

[1] The ETL is the short title of Chapter 3 of the Associations Code and is consolidated at 15 Pa.C.S. §§ 311-384. Subchapter F, 15 Pa.C.S. §§ 361-368, governs entity divisions.

[2] Section 362(a) provides that a "domestic entity may become a dividing association under this chapter by approving a plan of division." 15 Pa.C.S. § 362(a).

*id.*, Ex. C at 9. The Plan of Division memorialized the adoption and approval of the division by all six associations pursuant to Section 363 of the ETL.[3]

Petitioners recorded the Deeds reflecting the allocations described in the Plan of Division in Adams County on August 15, 2018. *Id.* ¶ 12; *see also id.*, Ex. D. Under the heading "CONFIRMATORY DEED," the Deeds memorialized the following transactions, each in consideration of payment of one dollar: Unit 3 from Kunj to Aspire; Unit 4 from Kunj to Eisenhower Water; Unit 5 from Kunj to Eisenhower Hotels; Unit 6 from Kunj to Allstar; and Unit 7 from Kunj to Eisenhower WWTF. *Id.* Accompanying the Deeds were Realty Transfer Tax Statements of Value, in each of which Petitioners claimed a realty transfer tax exemption pursuant to Section 1102-C.3(12) of Article XI-C of the Tax Reform Code of 1971 (Tax Code), known commonly as the Realty Transfer Tax Act (Act).[4] *Id.* ¶ 13.

On November 8, 2019, the Department issued Notices of Assessment to Petitioners advising that the recording of the Deeds did not qualify for the claimed exemption, and assessing Petitioners' tax liability as follows:

- For the transfer of Unit 3 to Aspire, the Department imposed state and local tax of $33,582.56, interest of $1,141.61, and a county recording fee of $40.00, for a total assessment of $34,764.17.

---

[3] In relevant part, Section 363(a)(1)-(2) of the ETL provides that a plan of division is not effective unless it has been approved by the dividing association and by "each interest holder, if any, of the domestic entity that will have interest holder liability for debts, obligations and other liabilities that arise after the division becomes effective." 15 Pa.C.S. § 363(a)(1)-(2).

[4] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of May 5, 1981, P.L. 36, 72 P.S. § 8102-C.3(12). Section 1102-C.3(12) provides that the realty transfer tax "shall not be imposed upon . . . [a] transfer made pursuant to the statutory merger or consolidation of a corporation or statutory division of a nonprofit corporation, except where the [D]epartment reasonably determines that the primary intent for such merger, consolidation or division is avoidance of the tax imposed by this article."

- For the transfer of Unit 4 to Eisenhower Water, the Department imposed state and local tax of $1,492.48, interest of $50.24, and a county recording fee of $40.00, for a total assessment of $1,582.72.

- For the transfer of Unit 5 to Eisenhower Hotels, the Department imposed state and local tax of $27,894.24, interest of $948.24, and a county recording fee of $40.00, for a total assessment of $28,882.48.

- For the transfer of Unit 6 to Allstar, the Department imposed state and local tax of $25,266.56, interest of $858.91, and a county recording fee of $40.00, for a total assessment of $26,165.47.

- For the transfer of Unit 7 to Eisenhower WWTF, the Department imposed state and local tax of $1,950.08, interest of $66.29, and a county recording fee of $40.00, for a total assessment of $2,056.37.

Joint Stip. ¶ 14; *see also id.*, Ex. E at 1-2; 7-8; 13-14; 19-20; 25-26.

Petitioners filed an appeal of the assessments with the Department's Board of Appeals on April 25, 2019. *See id.*, Ex. F. Therein, Petitioners maintained that the imposition of realty transfer tax was in error, as the transfers were effectuated only with "confirmatory deeds," which "do not constitute transfers of a beneficial interest in the [r]eal [p]roperty." *Id.* at 4. In an October 25, 2019 decision, the Board of Appeals sustained the assessments in their entirety, explaining that Petitioners have "failed to establish that the transactions at issue merely confirm that an interest in real estate passed by operation of law to a nonprofit corporation pursuant to a statutory division of a nonprofit corporation," as required for an exemption pursuant to Section 1102-C.3(12). *Id.*, Ex. G at 2.

Petitioners appealed to the Board of Finance and Revenue, which denied relief. *Id.*, Ex. I. The Board of Finance and Revenue explained that Petitioners failed to provide "sufficient evidence to establish the purpose of the division beyond avoidance of the realty transfer tax." *Id.* at 4. Thus, the Board of Finance and Revenue concluded that the "primary intent of the statutory division was to avoid

4

realty transfer tax," and that the deeds were therefore not entitled to an exemption. *Id.* This appeal followed.[5]

## II. Issues

Petitioners maintain that the Deeds are not subject to realty transfer tax on two grounds. First, Petitioners maintain that the Deeds are not "documents" as contemplated by the Act, which defines a document as a "deed instrument or writing" that evidences a "transfer or demise of title to real estate." Pet'rs' Br. at 10 (citing Section 1102-C of the Act, added by the Act of May 5, 1981, P.L. 36, 72 P.S. § 8101-C). In Petitioners' view, that definition reflects a legislative intent to impose tax only on transactions where "the interest is passing to a person or persons other than the grantor." *Id.* at 14.

In the alternative, Petitioners maintain that the property transfers are exempt from the realty transfer tax pursuant to Section 1102-C.3(12) of the Act, which excludes from taxation a "transfer made pursuant to the statutory merger or consolidation of a corporation or statutory division of a nonprofit corporation, except where the [D]epartment reasonably determines that the primary intent for such merger, consolidation or division is avoidance of the tax imposed by this article." 72 P.S. § 8102-C.3(12). While acknowledging that the provision only exempts divisions of nonprofits, Petitioners argue that such a narrow application of the

---

[5] In appeals from determinations of the Board of Finance and Revenue, this Court exercises the broadest scope of review. *Luther P. Miller, Inc. v. Commonwealth*, 88 A.3d 304, 308 n.5 (Pa. Cmwlth. 2014). Accordingly, our standard of review is *de novo*. *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222, 1227 n.5 (Pa. Cmwlth. 2012). *Id.* The stipulation of facts entered into by the parties is binding on them, although the Court may draw its own legal conclusions. *Id.* at 1227.

5

exemption is inconsistent with subsequent revisions to the Tax Code, as well as the Department's regulatory guidance and this Court's prior holdings.

## III. Discussion

Titled "Imposition of tax," Section 1102-C of the Act provides that

> [e]very person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof . . . a State tax at the rate of [1%] of the value of the real estate within this Commonwealth represented by such document[.]

72 P.S. § 8102-C. Section 1101-C of the Act defines "document" as

> **[a]ny deed, instrument or writing which conveys, transfers, demises, vests, confirms or evidences any transfer or demise of title to real estate in this Commonwealth**, but does not include wills, mortgages, deeds of trust or other instruments of like character given as security for a debt and deeds of release thereof to the debtor, land contracts whereby the legal title does not pass to the grantee until the total consideration specified in the contract has been paid or any cancellation thereof unless the consideration is payable over a period of time exceeding thirty years or instruments which solely grant, vest or confirm a public utility easement.

72 P.S. § 8101-C (emphasis added). In turn, "title to real estate" is defined as any "interest in real estate which endures for a period of time, the termination of which is not fixed or ascertained by a specific number of years, including, without limitation, an estate in fee simple, life estate or perpetual leasehold." *Id*.

This Court has long recognized that not all conveyances of title to real property are subject to the real estate transfer tax, but only those "in which the interest is passing to a person or persons other than the grantor." *Exton Plaza Assocs. v. Commonwealth*, 763 A.2d 521, 523 (Pa. Cmwlth. 2000). In *Exton Plaza*, a general

6

partnership established a limited partnership, then recorded a deed conveying its only asset, a shopping center, to the limited partnership. *Id.* at 522. The Department issued a notice imposing realty transfer tax on the transaction, explaining that "transfers between partnerships" were fully taxable. *Id.* The partnership argued before the Board of Appeals that the deed represented "not a transfer," but a "change in the form of the entity." *Id.* Thus, the partnership reasoned, the imposition of realty transfer tax would have "contravene[d] the intent, spirit, and language of the Act." *Id.* at 523. The Board of Appeals affirmed the Department's determination, and the Board of Finance and Revenue denied review. *Id.* On the partnership's appeal to this Court, we reversed, holding that the deed was "not a 'document' . . . within the meaning of the Act." *Id.* at 524. We held that the deed "did not effect a meaningful transfer of title," but "merely memorialized the conversion from a general partnership to a limited partnership." *Id.* The exclusion was "most analogous," we explained, "to the exclusion for a correctional or confirmatory deed that does not change the beneficial interest in the property." *Id.*

Both Petitioners and the Commonwealth rely on *Exton Plaza* in support of their respective arguments. Petitioners argue that the Deeds should be treated in the same way as the deed conveying the shopping center in *Exton Plaza*, since they reflect a transformation of the owning entity while that entity "maintained the same owners in the same proportions." Pet'rs' Br. at 16. In Petitioners' view, the establishment of the New Associations did not result in the creation of new property interests because it was a statutory division undertaken pursuant to the ETL. Petitioners point to Section 367(a)(3)(ii) of the ETL, which states that an entity created by a division "holds any property allocated to it as the successor to the

7

dividing association, and not by transfer, whether directly or indirectly, by operation of law." 15 Pa.C.S. § 367(a)(3)(ii). Since the allocation of the property to the New Associations was "not a transfer," Petitioners reason, the Deeds were "confirmatory" in nature. Pet'rs' Br. at 17. Petitioners argue that the Tax Code further confirms that the Deeds are exempt from realty transfer tax, pointing to 61 Pa. Code § 91.152(a)'s provision that a "deed made without consideration for the sole purpose of confirming title to real estate under a prior recorded document, including a deed that only asserts a transfer of title to real estate by operation of law as a result of an existing survivorship interest, is not taxable."

The Commonwealth rejoins that *Exton Plaza* is inapposite because the partnership in that case "remained the same" entity before and after the conversion to a limited partnership. Commonwealth's Br. at 19. The Commonwealth draws an analogy between the *Exton Plaza* partnership's reorganization and an individual property owner who elects to change her legal name, which would necessitate the recording of a new deed to reflect her new name while ownership remains in the same person. Kunj, on the other hand, "divided, remained in existence, and created *new* legal entities," argues the Commonwealth. *Id.* at 20 (emphasis in original). The Commonwealth observes that, when deeds are recorded pursuant to statutory division under the ETL, Section 367(f) requires

> one of the following **documents** [to be] filed by the office for the recording of deeds of the county . . . in which the tract or parcel is situated:
>
> (1) **A deed, lease or other instrument of confirmation describing the tract or parcel.**
>
> (2) A duly executed duplicate original copy of the statement of division.

(3) A copy of the statement of division certified by the [D]epartment.

(4) A declaration of acquisition stating the value of real estate holdings in the county of the new association as an acquired association.

15 Pa.C.S. § 367(f) (emphasis added by the Commonwealth). The Commonwealth reasons that the ETL's reference to a deed as a *document* supports its position that the Deeds are "documents" for purposes of the Act, and therefore subject to realty transfer tax. Pet'rs' Br. at 17-18.

We agree with Petitioners that the Deeds in this case are not documents as contemplated in the Act. To explain our conclusion, it is necessary to shed light on changes to the relevant statutory landscape since our *Exton Plaza* decision. At the time of *Exton Plaza*, no specific statute authorized conversions such as that undertaken by the partnership. The law governing entity transformations at the time, Subchapters C through E of the Business Corporation Law (BCL) of 1988, *formerly* 15 Pa.C.S. §§ 1921-1966, only included a subchapter authorizing the conversion of for-profit corporations into nonprofit corporations. *See former* 15 Pa.C.S. §§ 1961-1966. In 2014, the General Assembly repealed former Subchapters C through E and replaced them with the ETL through enactment of the Association Transactions Act, Act of October 22, 2014, P.L. 2640, No. 172, effective July 1, 2015. Since then, a general partnership's conversion into a limited partnership may be accomplished pursuant to Subchapter E of the ETL, which, *inter alia*, provides that a "domestic entity may become a domestic entity of a different type or a domestic banking institution." 15 Pa.C.S. § 351(a)(1). Section 356(a)(1)(ii) of the ETL specifically provides that the association resulting from the conversion is the "same association without interruption as the converting association," and Section 356(a)(2) further

9

provides that the converting association's property "continues to be vested in the converted association without reversion or impairment, and the conversion *shall not constitute a transfer of any of that property*." 15 Pa.C.S. § 356(a)(1)(ii), (a)(2) (emphasis added). Thus, through the ETL's clear language, the General Assembly has enshrined into the statute the principle that this Court recognized in *Exton Plaza*: that the allocation of real property through an entity conversion does not create a property interest in any "person or persons other than the grantor." *Exton Plaza*, 763 A.2d at 523.

The formation of Kunj and the New Associations was not a conversion, of course, but a division accomplished pursuant to Subchapter F of the ETL, 15 Pa.C.S. §§ 361-368. Section 361(a)(1) of the ETL specifically provides that "a domestic entity may divide into . . . the dividing association and one or more new associations that are either domestic entities or foreign associations." 15 Pa.C.S. § 361(a)(1). As a consequence of the division, Section 367(a)(3)(ii) states, the property allocated to the new association vests "without reversion or impairment, and the division shall not constitute a transfer, directly or indirectly, of any of that property." 15 Pa.C.S. § 367(a)(3)(ii). The resemblance between the ETL's language concerning the effect of entity *divisions* and the language concerning the effect of entity *conversions* is expressly recognized in the commentary on Section 367, which explains that Section 367 largely "parallels analogous provisions in Subchapters 3C (merger), 3D (interest exchange), 3E (conversion), and 3G (domestication)." 15 Pa.C.S. § 367, Committee Comment - 2022. The commentary further explains that Section 367 "applies to divisions the holding in *Sante Fe Energy Resources, Inc. v. Manners*, 635 A.2d 648 (Pa. Super. 1993), that in a merger the assets of each merging association vest in the survivor and those assets are neither assigned *nor transferred* to the surviving

association." *Id.* (emphasis added). Thus, Subchapter F's plain language permits a business to divide into new associations without transfer of its ownership interests, just as though the business had undertaken a conversion under Subchapter E.

The Commonwealth's attempt to distinguish *Exton Plaza* on the ground that Kunj "divided, remained in existence, and created *new* legal entities," Commonwealth's Br. at 20 (emphasis in original), is unavailing. Through the enactment of the ETL, the General Assembly has eliminated the difference between conversion and division of the impact on an association's ownership interests. The Commonwealth does not explain why Section 367(a)(3)(ii) of the ETL is inapplicable to this case. Instead, the Commonwealth only argues that the applicability of realty transfer tax is established by Subsection (f)'s requirement that one of several types of "documents" be filed, among them, a "deed, lease or other instrument of confirmation describing the tract or parcel." 15 Pa.C.S. § 367(f).

However, the Commonwealth's proposed interpretation is contradicted by the commentary on Section 367. As the commentary explains, Subsection (f) "reflects th[e] concept" that, when property interests are allocated in a division pursuant to Subchapter F, "title to those interests automatically passes to the resulting association, as between the dividing association and the resulting association." 15 Pa.C.S. § 367 - Committee Comment 2022. Thus, the commentary further explains that Subsection (f) makes clear "that the filing of the statement of division in the Department of State is not constructive notice of the change of record title (as opposed to legal title) to the resulting association, except in the case of a nonprofit corporation." *Id.* However, the failure to file such a "confirmatory instrument . . . has no impact on the validity and enforceability of the division as between the dividing and the resulting associations." *Id.* Thus, the "documents"

11

contemplated by Section 367(f) do not have any effect on legal title to the property, which had already passed to the new associations through the plan of division. The commentary's reference to such an instrument as "confirmatory" further supports the conclusion that the beneficial interest in the property is unchanged by the filing of that instrument.[6]

## IV. Conclusion

The Act imposes realty transfer tax on the making, execution, delivery, acceptance, or presentation for recording of a "document"—that is, a "deed, instrument or writing which conveys, transfers, demises, vests, confirms or evidences any transfer or demise of title to real estate in this Commonwealth." 72 Pa.C.S. §§ 8101-C-8102-C. Through the use of unambiguous language, the General Assembly has declared that an association created through a statutory division pursuant to Subchapter F of the ETL, 15 Pa.C.S. §§ 361-368, is a successor to the dividing association, and does not acquire its property through a transfer of the property's beneficial interest. Since the Deeds did not convey, transfer, demise, vest, confirm, or evidence any *transfer or demise* of title to real estate, they are not

---

[6] The Commonwealth also points to the commentary on former Section 1957 of the BCL, which included a comment that Section 1957 "differs from the analogous provision applicable to nonprofit corporations in order to insure that the procedure of division cannot be used as a technique to avoid real estate transfer taxes." Former 15 Pa.C.S. § 1957, Comments and Source Notes. In the Commonwealth's view, this comment renders clear the General Assembly's intent "to tax transfers of real property between dividing corporations and prevent the avoidance of tax simply by dividing the for-profit corporation and allocating real property to the new corporation." Commonwealth's Br. at 18. Former Section 1957 was obviously repealed, however, and the commentary on Section 367 does not include the comment cited by the Commonwealth.

12

"documents" as contemplated by the Act. Accordingly, the Board of Finance and Revenue's order is reversed.[7]

_____
MATTHEW S. WOLF, Judge

---

[7] Having concluded that the realty transfer tax is inapplicable, we need not address Petitioners' argument that the Deeds are additionally exempt from taxation under Section 1102-C.3(12) of the Act, 72 Pa.C.S. § 8102-C.3(12).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Kunj Harrisburg LLC, | : |
| Eisenhower WWTF, Inc., | : |
| Eisenhower Water Supply, Inc., | : |
| Eisenhower Hotels, LLC, | : |
| Allstar Exposition, LLC, and | : |
| Aspire Hotel, LLC, | : |
| Petitioners | : |
| | : |
| v. | : No. 390 F.R. 2020 |
| | : |
| Commonwealth of Pennsylvania, | : |
| Respondent | : |

# **O R D E R**


AND NOW, this 10th day of January 2025, the Order of the Board of Finance and Revenue in the above-captioned matter, dated July 10, 2020, is hereby REVERSED. Unless exceptions are filed within thirty (30) days pursuant to Pa.R.A.P. 1571(i), this Order shall become final.


_____
MATTHEW S. WOLF, Judge